UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KAREN SHEWBERT, d/b/a SEQUIM VEHICLE/VESSEL LICENSING,<br><br>                              Plaintiff,<br><br>        v.<br><br>PATRICIA ROSAND, Clallam County Auditor, in her individual and official capacities,<br><br>                              Defendant. | CASE NO. 3:14-CV-05682<br><br>ORDER ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT |

        This matter comes before the Court on Defendant's motion for summary judgment. Dkt. 15. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Dkt. 18, 21.

                              RELEVANT FACTS AND PROCEDURAL HISTORY

        Although characterized differently by the parties, the facts are well-documented by the parties' correspondence and are largely undisputed. Plaintiff, Karen Shewbert, owned and operated Sequim Vehicle/Vessel Licensing from 1999 until May of 2012, when Defendant,

former Clallam County Auditor, Patricia Rosand, terminated a contract ("the Contract") between

Plaintiff and Defendant. Dkt. 16, at 16-35. The Contract appointed Plaintiff to operate a vehicle

and vessel licensing agency in Sequim, Washington, in accordance with the Contract, relevant

statutes, and policies of the State of Washington Department of Licensing ("DOL"). Dkt. *Id.*, at 16.

The Contract was first issued in 1999 and last renewed in 2008, with an expiration date of June

30, 2012. *Id.*, at 17. The Contract differentiated between a material breach of the Contract, which

constituted grounds for immediate termination, and a breach of any other provision, also grounds

for termination, that required a reasonable opportunity—not to exceed 30 days—for Plaintiff to cure

the breach. *Id.*, at 20. By its terms, the Contract also gave Plaintiff the right to appeal any

termination to a Review Board convened by DOL, and specified the time for review,

composition of the Review Board, burden of proof, remedy, and evidence procedure. *Id.*, at 22.

Following a DOL audit conducted during April 2011, DOL issued a Compliance Review,

which identified Plaintiff as noncompliant with DOL Policy/Procedure VEH 7.D. Dkt. 16, at 47-

50. The Compliance Review reads in relevant:

> <u>Criteria</u>: [DOL] Policy/Procedure VEH 7.D requires offices to maintain a check register
> that documents all licensing account activity. The check register should report: 1) The
> date and amount of each transaction (deposits, checks, etc), 2) The check number and the
> payee for each check drawn on the account, 3) The amount of both DOL and Agent
> withdrawals made via ACH files with reference to the date the monies were collected by
> the office, 4) Adjustments to correct an error in a previous entry, 5) Record a charge for a
> dishonored check, 6) The balance in the account on a daily basis.
> <u>Condition</u>: During the audit the auditor reviewed duplicate deposit slips, the check
> register, the bank statement and workstation summary reports. During the review it was
> noted the office does not carry a daily balance in the check register.
> <u>Remedy</u>: The office will maintain the balance in the check register on a daily basis. *Id.*, at
> 49.

The Compliance Review stated that "[w]ithin 60 calendar days . . . the County Auditor

[Defendant] or [Defendant's] designee shall discuss remedy requirements . . . and will document

corrective actions . . . to ensure continuing compliance[.]  *Id.*, at 50.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 2

On June 8, 2011, Defendant's office asked that "starting next month . . . [Plaintiff would] send [Defendant] a copy of [her] checkbook register on a monthly basis . . . to be post dated no later than the second working day of the month." Dkt. 16, at 52. In a letter dated July 5, 2011, Defendant wrote Plaintiff a formal reprimand for her lack of response to the Compliance Review. *Id.*, at 54. According to the letter, Plaintiff had been given until July 1, 2011 to respond to DOL's Compliance Review, but Plaintiff had denied Defendant access to her checking account register because according to Plaintiff, Defendant "ha[d] no right" to Plaintiff's checking account register, and in fact, Plaintiff "ha[d] no intention of complying" with the request. *Id*. Defendant gave Plaintiff an option to remedy the situation if Defendant would send a copy of her checking account register for May 1, 2011 to June 30, 2011, and requested that Plaintiff provide the checking account register each month until further notice. *Id*.

Plaintiff responded by letter on July 7, 2011, asking Defendant, "with regards to sending my checkbook register on a monthly basis, what is the basis for the request? Patty Rosand, Auditor, has authority at any time to request copies of checks, deposits . . . and is already receiving my [DOL] bank statement every month." Dkt. 16, at 56. Plaintiff by letter dated July 12, 2011 wrote that "it was an abuse of power by the auditor's office to require [Plaintiff] to provide [her] DOL bank register" on a monthly basis." *Id.*, at 61. According to Plaintiff, the audit required Plaintiff to document her corrections made, but "[did] not require [her] to send it [sic] continually every month[.]" *Id*.

On July 14, 2011, Defendant emailed DOL regarding Plaintiff's checking account register practice, which DOL confirmed was "[not] acceptable," articulating what Plaintiff's check register should include. Dkt. 16, at 67. Defendant conveyed this information to Plaintiff by letter on July 18, 2011. *Id.*, at 71, 72. On September 13, 2011, Defendant thanked Plaintiff for sending her

1    several monthly check registers but pointed out a discrepancy, which, according to Defendant,

2    required a copy of Plaintiff's bank reconciliation from bank statements of June, July, and August

3    2011. Dkt. 16-1, at 22. Plaintiff attempted to call Defendant on September 16, 2011, but was

4    unable to reach Defendant, so by letter she responded to Defendant's concerns. *Id.*, at 25, 26.

5    Defendant replied by letter on September 20, 2011, again requesting bank reconciliation

6    statements. *Id.*, at 32.

7            On December 14, 2011, Defendant informed Plaintiff of "significant service quality

8    deficiencies," based on an audit by DOL for August 15-31, 2011, and an audit by the Clallam

9    County Auditor for September 6, 2011. Dkt. 16-1, at 38-41. Defendant also reminded Plaintiff of

10   her outstanding request for reconciliation reports, asking for a response within fifteen days. *Id.*,

11   at 39. Plaintiff asked for thirty days to respond, which Defendant allowed. In the same

12   correspondence, Defendant reminded Plaintiff to provide her with checking account registers

13   from September through December 2011 and pointed out an additional service quality deficiency

14   brought to her attention. *Id.*, at 43-46. Plaintiff again asked for additional time to respond, a

15   request that Defendant rejected. *Id.*, at 48-51.

16           Plaintiff submitted a corrective action plan on January 20, 2012, prior to the extended

17   deadline. Dkt. 16-1, at 53-55. In her letter, Plaintiff also expressed her frustration with

18   Defendant's requests, writing that "[Defendant's] posture is impossible and counter productive,"

19   because, according to Plaintiff, Plaintiff made efforts to comply, but felt that she was "out of

20   options." *Id.*, at 54. The corrective action plan was not to Defendant's satisfaction. *Id.*, at 66-68.

21   Defendant wrote in response on February 17, 2011, that "while [she] believes that [Plaintiff's

22   solutions] . . . are a step in the right direction . . . I feel that it important that you and your staff

23   undergo training . . . To that end, my office would be glad to offer training[.]" *Id.*, at 67.

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 4

1  Defendant also again reprimanded Plaintiff for her failure to provide financial records,

2  summarizing Defendant's repeated efforts to obtain them. *Id.*, at 68.

3        On February 24, 2011, Craig Miller, attorney, wrote Defendant to inform her of his

4  retention by Plaintiff. Mr. Miller said that his representation would "almost certainly invoke Ms.

5  Shewbert's right to contest the written reprimand, in accordance with paragraph 11.2.2 [of the

6  Contract]." Dkt. 16-1, at 72. On behalf of Defendant, Deputy Prosecuting Attorney Mark Nichols

7  wrote Mr. Miller on March 1, 2011, in a letter that articulated the basis for Plaintiff's breach of

8  Contract, which "may result in additional discipline up to and including termination of the

9  Contract," as well as newly-discovered service quality deficiencies. *Id.*, at 74, 75.

10        Mr. Miller and Mr. Nichols met on March 6, 2012, as reflected by their correspondences.

11  Dkt. 16-1, at 79, 80, 84-86. Mr. Miller, in a letter addressed to Mr. Nichols dated March 12,

12  2012, stated that he "will with this letter [] confirm the various agreements . . . made at our

13  meeting [on March 6, 2012] . . . I appreciate the tenor of that meeting, which sought a mutually

14  agreeable conclusion to a disagreement between our respective clients, hopefully avoiding the

15  necessity of litigation." *Id.*, at 79. Mr. Nichols' response, addressed to Mr. Miller and dated April

16  3, 2012, acknowledged the meeting but took issue with each of the memorialized items in Mr.

17  Miller's letter and cited an additional quality service violation from March 21, 2012. *Id.*, at 84-86.

18        On April 30, 2012, Defendant mailed Plaintiff a Notice of Termination, expressing her

19  intent to terminate the Contract with seven calendar days' written notice. Defendant's termination

20  "stem[med] in large part from [Plaintiff's] continued failure to produce copies of check registers

21  and reconciliation reports for . . . [the] DOL checking account." Dkt. 16-1, at 88. By letter on May

22  1, 2012, DOL terminated Plaintiff as a DOL subagent, effective May 11, 2012, stating that "[t]his

23  termination does not affect your rights to appeal as provided in the contract." *Id.*, at 90. Plaintiff,

24

1  through her attorney, served her Notice of Appeal on May 2, 2012. *Id.*, at 92. On May 10, 2012,

2  Plaintiff obtained a Temporary Restraining Order on May 10, 2012, which was dissolved as of

3  July 2, 2012. *Id.*, at 99-110. A three-person Review Board, along with counsel for Defendant,

4  Plaintiff, and DOL, convened on June 25, 2012 to review Defendant's termination of the Contract

5  for cause, and after deliberating, concurred with Defendant, upholding the Contract termination.

6  *Id.*, at 112.

7      Plaintiff filed this action seeking relief under § 1983 for Defendant's alleged deprivation

8  of Plaintiff's property right, which violated her right to procedural Due Process, and, under state

9  law, for Defendant's alleged breach of an implied covenant of good faith. Dkt. 1.

10                    <u>SUMMARY JUDGMENT STANDARD</u>

11      Summary judgment is proper only if the pleadings, the discovery and disclosure materials

12  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

13  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is

14  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

15  showing on an essential element of a claim in the case on which the nonmoving party has the

16  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

17  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

18  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

19  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

20  metaphysical doubt").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

21  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

22  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

23  *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

24

1 | *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

2 |     The determination of the existence of a material fact is often a close question.  The court

3 | must consider the substantive evidentiary burden that the nonmoving party must meet at trial–

4 | e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

5 | *Service Inc.*, 809 F.2d at 630.  Issues of fact must be resolved in favor of the nonmoving party

6 | only when the facts specifically attested by that party contradict facts specifically attested by the

7 | moving party. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

8 | Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be

9 | "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

10 | DISCUSSION

11 |     The parties' briefing focuses on Plaintiff's Due Process claim, not Plaintiff's state law

12 | claim. Defendant argues that Plaintiff does not have a constitutionally-protected property interest

13 | in the Contract, but even if so, Plaintiff was accorded constitutionally-sufficient adequate notice

14 | and hearing processes. Dkt. 15, at 13-18; Dkt. 21, at 5-10. Moreover, Defendant contends,

15 | Defendant is entitled to qualified immunity, because there was no constitutional violation, but

16 | even if so, there is no evidence that Defendant acted outside of clearly established law. Dkt. 15,

17 | at 6-10; Dkt. 21, at 10-13.

18 |     Plaintiff argues the opposite. According to Plaintiff, Defendant's summary termination of

19 | the Contract without a pretermination hearing deprived her of procedural Due Process, given her

20 | constitutionally protected property interests in the Contract, agency appointment, and her

21 | business. Dkt. 18, at 11-15. Plaintiff argues that Defendant is not entitled to qualified immunity

22 | because Plaintiff's right to a pretermination hearing—which Defendant violated—is clearly-

23 | established law, and furthermore, the post-termination hearing has no preclusive effect on the

24 |

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 7

1    violation. *Id.*, at 16-19.

2           In order to state a claim under 42 U.S.C. § 1983, plaintiffs must allege that the conduct

3    complained of was committed by a defendant acting under color of state law, and that the

4    conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

5    of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds,*

6    *Daniels v. Williams*, 474 U.S. 327 (1986). In this case, the parties do not appear to disagree that

7    Defendant acted under color of state law, a conclusion substantiated by the record. *See* RCW

8    46.01.140(6). However, whether Plaintiff had a constitutionally-protected property right that

9    violated by Defendant is at issue. Whether the defense of qualified immunity applies is also at

10   issue, because if it does, Plaintiff is precluded from recovery under § 1983.

11          Qualified immunity protects defendants in a § 1983 action if defendants' conduct does not

12   violate clearly established statutory or constitutional rights that a reasonable person would have

13   known of.  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457

14   U.S. 800, 818 (1982)).  Qualified immunity balances two important interests: the need to hold

15   public officials accountable when they exercise power irresponsibly and the need to shield

16   officials from harassment, distraction, and liability when they perform their duties reasonably.

17   *Harlow v. Fitzgerald*, 457 U.S. at 815. In analyzing a qualified immunity defense, the Court

18   must determine: (1) whether a defendant's acts as alleged violated a constitutional right, taking

19   the facts in the light most favorable to the party asserting the injury; and (2) whether the

20   constitutional right was clearly established law.  *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).

21   While the sequence set forth in *Saucier* is often appropriate, judges may exercise their discretion

22   in addressing the two prongs of the analysis. *Pearson v. Callahan*, 129 S.Ct. 808, 811 (2009).

23   The existence of qualified immunity, which is a question of law, generally turns on the objective

24

1    reasonableness of the actions, without regard to the knowledge or subjective intent of the

2    particular official. *Id.*, at 819.

3         On the facts in this case, the Court finds that the defense of qualified immunity applies.

4    Even assuming that Plaintiff had a constitutionally-protectable property right, it does not appear

5    that Defendant violated Plaintiff's right to procedural Due Process, but even if she did, the

6    pretermination procedure accorded Plaintiff did not violate clearly established law.

7         *a.   Clearly Established Law*

8         A right becomes clearly established law through controlling precedent of the Supreme

9    Court or a particular circuit court, unless its unlawfulness is apparent in light of pre-existing law.

10   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The right "must be clearly established in a

11   fairly particularized . . . sense . . . [such that] a reasonable official would understand that what he

12   is doing violates that right[.] *Id. See also*, *Saucier v. Katz*, 533 U.S. at 201 (qualified immunity

13   analysis "must be undertaken in light of the specific context of the case, not as a broad general

14   proposition").

15        According to Plaintiff, since *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532

16   (1985), "it has been crystal clear that the government cannot deprive a person of her . . . property

17   interest . . . without a pretermination hearing." Dkt. 18, at 15. In a non-binding case cited by

18   Plaintiff, the court cited *Loudermill* for the proposition that "a state employee with a

19   constitutionally protected property interest in employment is entitled to a hearing *before* being

20   discharged." *Computer Sciences Corp. v. Ibarra*, 685 F. Supp. 748, 755 (D. Colo.1988).

21        In *Loudermill*, a plaintiff challenged a state statute that allowed for public employees'

22   termination for cause without an opportunity to respond before termination. *Id.*, at 522, 542-48.

23   Although the state statute provided discharged employees with a post-termination hearing, the

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 9

1   opportunity to be heard under the Due Process Clause guaranteed the plaintiff "some kind of

2   hearing" prior to discharge, when balancing "the private interest in retaining employment, the

3   governmental interests in expeditious removal of unsatisfactory employees and the avoidance of

4   administrative burdens, and the risk of an erroneous termination." *Id.*, at 542, 543. After weighing

5   these competing interests, the court found that the plaintiff was entitled to a pretermination

6   "hearing," a word placed in quotations by the court, which noted that the hearing "need not be

7   elaborate." The court summarized its holding, "conclud[ing] that all the process that is due is

8   provided by a pretermination opportunity to respond, coupled with post-termination

9   administrative procedures[s]." *Id.*, at 547.

10        *Loudermill* has not been uniformly interpreted. For example, some courts have

11   interpreted *Loudermill* narrowly to apply only to public employees who are tenured. *See, e.g.,*

12   *Echtenkamp v. Loudon Cty. Public Schools*, 263 F.Supp. 2d 1032, 1054 (2003); *Gross v. Vill. of*

13   *Minerva Park Vill. Council*, 997 F. Supp. 2d 813, 824 (S.D. Ohio 2014). *See Loudermill*, at 546

14   ("the tenured public employee is entitled to . . . notice of the charges against him, an explanation

15   of . . evidence, and opportunity to present his side of the story"). Other courts have declined to

16   extend *Loudermill* as guaranteeing a face-to-face meeting with a final decisionmaker. *Laskar v.*

17   *Peterson*, 771 F.3d 1291, 1298 (11th Cir. 2014) ("[I]n context, the Supreme Court was simply

18   stating that the time to be heard is prior to adverse employment action"). The common thread of

19   the precedent—and what this Court finds *is* clearly established by the holding in *Loudermill*, is that

20   Plaintiff had the right to an opportunity to be heard prior to termination. *Id.*, at 547.

21   Unfortunately for Plaintiff, the record is clear that Defendant observed this right.

22        The extensive correspondences between Plaintiff and Defendant make plain that Plaintiff

23   was given multiple opportunities to be heard in response to allegations by Defendant. Although

24

1   Plaintiff disagreed with Defendant's reasoning along the way, Defendant directly considered

2   Plaintiff's responses. *See, e.g.,* Dkt. 16, at 54, 71, 72; Dkt. 16-1, at 32, 43-46. Plaintiff was

3   informed in writing of service quality deficiencies, given an opportunity to reform, and warned

4   that her failure to remedy could terminate the Contract. Dkt. 16-1, at 38-41, 66-68, 74, 75.

5   Defendant also offered to provide Plaintiff with remedial training, an offer that Plaintiff refused.

6   *Id.*, at 67. Finally, after months of correspondence, Plaintiff hired a lawyer, and, represented by

7   counsel, she discussed Defendant's concerns, the same concerns that ultimately formed the basis

8   for Plaintiff's termination. *Id.*, at 72. *See id.*, at 88. On these facts, the Court must conclude that,

9   because Plaintiff was given multiple opportunities to be heard prior to termination, procedural

10   Due Process was satisfied. This is particularly the case where Plaintiff could appeal the

11   termination under a specific administrative procedure post-termination, which *Loudermill*

12   specifically recognizes as a consideration. *Id.*, 547 ("We conclude that all the process that is due is

13   provided by a pretermination opportunity to respond, *coupled with post-termination*

14   *administrative procedures*").

15        Even if Plaintiff is correct that *Loudermill* made the right to a pretermination *hearing*

16   clearly established law, what constitutes a "hearing" is not clearly established law. *Loudermill*

17   explicitly left this question unanswered: "the formality and procedural requisites [of

18   pretermination hearings]. . . can vary, depending upon the importance of the interests involved

19   and the nature of the subsequent proceedings." *Id.*, at 545, quoting from *Boddie v. Connecticut*,

20   401 U.S. 371, 378 (1971). Remarkably, the *Loudermill* court placed quotations around the word

21   "hearing." *Id.*, at 545. In its discussion of what constitutes a hearing, the court rejected the need for

22   a full adversarial hearing and commented that a "pretermination hearing need not definitively

23   resolve the propriety of the discharge. It should be an initial check against mistaken decisions[.]"

24

1  *Id.*

2       Applied here, Plaintiff opines that the pretermination hearing was insufficient but does

3  not describe what, under the circumstances, would have been a satisfactory under *Loudermill*.

4  However, it is undisputed by the parties that on May 6, 2012, a date prior to Plaintiff's

5  termination, Plaintiff's attorney and Defendant's attorney met and discussed deficiencies in

6  Plaintiff's performance. Dkt. 16-1, at 79, 80, 86-88. **Whether the parties attended is not clear.**

7  Although the meeting may have lacked formality, on the record provided it appears to satisfy

8  *Loudermill* as a 'hearing' that was an initial check against Defendant's potential errors, **in light of**

9  **the substantial communications,** Plaintiff**'s representation by an attorney**, and a context

10  where that pretermination meeting was 'coupled' with **a** formal, post-termination administrative

11  hearing. *Id.*, at 112.

12       Finally, even if the Court has misinterpreted and misapplied *Loudermill*, it cannot be said

13  that Defendant's actions were unreasonable and in violation of clearly established law, especially

14  where *Loudermill* left open the question of what a pretermination hearing looks like. Plaintiff

15  offers no explanation or authority for what the May 6, 2012 meeting lacked compared with a

16  'hearing' under *Loudermill*, nor does it appear that there is controlling authority on the subject.

17       In summary, even assuming that Plaintiff has a property right, it is not clear that

18  Defendant violated Plaintiff's procedural right to Due Process, but even if she did, Defendant did

19  not violate clearly established law. Plaintiff's § 1983 claim should be dismissed.

20       *b.   Constitutional Violation*

21       Because the Court's analysis of whether Defendant violated clearly established law

22  dispenses with Defendant's motion, the Court need not address the other prong under *Saucier*,

23  whether there is a sufficient showing of a constitutional violation. The Court notes, however, that

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 12

1    it is not entirely clear whether Plaintiff had a constitutionally-protected property right in the first

2    place, a condition precedent to Defendant violating Plaintiff's right.

3        Plaintiff cites *Board of Regents v. Roth*, 408 U.S. 564 (1972), for the proposition that

4    property interests are not created by the Constitution, but "[r]ather [] are created and their

5    dimensions are defined existing rules of understandings that stem from an independent source

6    such as state law[.]' *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Under this rule, it would

7    appear that Plaintiff has a property interest under RCW 46.01.140(6). However, not all public

8    contracts are property interests subject to relief under § 1983. Particular to public employment,

9    courts have been reluctant to find that a private party's contract with the government creates a

10   protected property interest, because doing so runs the risk that routine breach-of-contract claims

11   could be converted into § 1983 claims. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196

12   (2001); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995); *Med.*

13   *Laundry Servs., a Div. of OPLCO, Inc. v. Bd. of Trustees of Univ. of Alabama*, 906 F.2d 571, 573

14   (11th Cir. 1990). Although the Court need not decide the issue, it would seem that Plaintiff's §

15   1983 claim is a routine public employee contract case and thus not actionable as a matter of

16   constitutional right.

17       c.   *State Law Claim*

18       Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental

19   jurisdiction over state law claims whenever they dismiss related claims over which they have

20   original jurisdiction. The Court has original jurisdiction over Plaintiff's § 1983 claim, which

21   should be dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's

22   state law claim for breach of implied covenant of good faith, so that claim should also be

23   dismissed without prejudice.

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 13

* * *

Therefore, it is hereby

ORDERED that Defendants' Motion for Summary Judgment (Dkt. 15) is GRANTED IN PART AND DENIED IN PART as follows:

Count 1 (§ 1983 claim) is dismissed with prejudice.

Count 2 (state law claim for breach of implied covenant of good faith) is dismissed without prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.        .

Dated this 28th day of July, 2015.

ROBERT J. BRYAN
United States District Judge